Maria Guadalupe **GUERRERO** de **NODAHL**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Department of Justice, Respondent.**

No. 22134.

United States Court of Appeals Ninth Circuit.

Feb. 14, 1969.

Rehearing Denied April 3, 1969.

Howard R. Harris (argued), National City, Cal., for appellant.

Carolyn M. Reynolds (argued), Asst. U. S. Atty., Wm. M. Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Los Angeles, Cal., Ramsey Clark, Atty. Gen., Stephen Suffin, San Francisco, Cal., and Joseph Sureck, San Pedro, Terminal Island, Cal., Immigration and Naturalization Service, for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and * CRARY, District Judge.

BARNES, Circuit Judge:

This is an appeal, cognizable in this court under 8 U.S.C. § 1105a, from a decision of the Board of Immigration Appeals ordering petitioner's deportation because of her April 15, 1965, conviction in the Superior Court of the State of California in and for the County of San Diego of the offense of inflicting corporal injury upon a child, as charged in an Information, in violation of section 273d of the California Penal Code.[1] The information charged that the petitioner, on the dates and place stated " * * * did wilfully, unlawfully and feloniously make an assault and inflict a corporal injury upon OSCAR NODAHL, then and there a minor child * * * of the age

---

* Hon. E. Avery Crary, United States District Judge, Los Angeles, California, sitting by designation.

1. That section reads, in part, "[A]ny person who willfully inflicts upon any child any cruel or inhuman corporal punishment or injury result-

ing in a traumatic condition, is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for not more than two years or in the county jail for not more than one year."

of nine years, and that the said assault did result in a traumatic injury to the said OSCAR NODAHL, a human being." Petitioner's sentence for the state court conviction was imprisonment for two years in the California Institute for Women.

 A native and citizen of Mexico, petitioner was admitted for permanent residence in this country on June 14, 1961. The child beating for which she was convicted occurred between December 25, 1964 and January 7, 1965. On November 21, 1966, the Immigration and Naturalization Service issued an order to show cause which alleged petitioner was subject to deportation under 8 U.S.C. § 1251(a) (4) because she had been convicted of a crime involving moral turpitude within five years of her entry into this country. At the hearing pursuant to the order, petitioner admitted the allegations of fact in the order but argued that her state conviction was unfairly obtained and based on insufficient evidence.

The hearing examiner found that the only element of the requirements of the statute under which petitioner was to be deported that remained to be proved after petitioner's admission of fact, that she had been convicted as charged, was that the crime involved "moral turpitude." In ruling that moral turpitude was present in petitioner's crime, the hearing examiner stressed the fact that an element of the crime was the "willful" manner in which the injury was inflicted. The hearing examiner determined that "willful," as defined by federal criminal case law, connoted "bad motive or evil intent" and concluded that petitioner's conduct involved moral turpitude because that term "has been defined as * * * intrinsically wrong. * * *" citing Ng Sui Wing v. United States, 46 F.2d 755 (7th Cir. 1931). As a result, the hearing examiner found petitioner within the statute and ordered her deported. This decision was unsuccessfully appealed to the Board of Immigration Appeals on the theory that petitioner's crime did not involve moral turpitude because the forbidden conduct could have been prompted by a quick temper or weak character as opposed to a vicious or corrupt mind.[2] In rejecting this distinction, the Board pointed out that the wording of the statute [3] is "cruel or inhuman corporal punishment or injury," indicating that an act within the statute might, by definition, without regard to motivation, involve moral turpitude. We agree with this analysis, and, in so doing, reject petitioner's first ground for reversal which is based on California's definition of "willful." Petitioner points out that section 7 of the California Penal Code provides, in part,

> "The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to It does not require any intent to violate law, or to injure another, or to acquire any advantage."

Petitioner's argument is that since "willful" as defined by the California Penal Code does not contain the sinister overtones attributed to the term in federal case law, petitioner's crime does not necessarily fall within the statute. While this approach may be responsive to the rationale of the hearing examiner's opinion, it is not incompatible with our holding. Accepting "an act of baseness or depravity contrary to accepted moral standards," Pino v. Nicolls, 119 F.Supp. 122, 128 (D.Mass.), aff'd 215 F.2d 237 (1st Cir. 1954), rev'd on other grounds, Pino v. Landon, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955), as a definition of "moral turpitude" applicable here, we rule that inflicting "cruel or inhuman corporal punishment or injury" upon a child is so offensive to American ethics that the fact that it was done purposely or willingly (the California definition of "willful") ends debate on whether moral

---

2. One could argue, with little convincingness, that murder could have been prompted by a quick temper.

3. Cf. Wadman v. Immigration & Nat. Serv., 329 F.2d 812, 813 (9th Cir. 1964).

turpitude was involved.[4] When the crime is this heinous, willful conduct and moral turpitude are synonymous terms.

Petitioner's second ground for reversal, raised for the first time on appeal, is that petitioner's rights as set forth in 8 C.F.R. § 242.16 (revised as of January 1, 1968)[5] were not respected since the charges were not read to her at the hearing and she did not waive the reading. The relevant portion of the transcript is as follows:

"Q. Mr. Morris, [petitioner's representative] on behalf of the respondent, are you willing to waive the reading of the allegations of fact and the charge contained in the Order to Show Cause and to plead to them for the respondent?

"A. Well I'd like to contest the— charge here.

"Q. Well you may plead whichever way you want to, that is, if you want to deny anything, you may.

Mr. Morris you are willing to waive the reading and to make the plea for the respondent, is that correct?

"A. I have read it but I would like to contest the charges if possible.

"Q. Yes, well all right, let's go to that."

We take the above twice-offered opportunity to have the allegations and charges read and the declining of these chances—first by a defendant who indicates she has knowledge of what "the charges" are; and secondly by her attorney, who states he had read the charges —to be a knowing waiver. This, coupled with the petitioner's inability to show any harm resulting from the alleged "denial" prompts us to conclude that the interests of justice will not be served by a reversal on this point.

Finding no error in its holding, we affirm the decision of the Board of Immigration Appeals.

Affirmed.

---

4. But see: People v. Beaugez, 232 Cal. App.2d 650, 43 Cal.Rptr. 28; People v. McCaughan, 49 Cal.2d 409, 317 P.2d 974, 978 (1957).

5. § 242.16 reads in part: "The special inquiry officer shall * * * read the factual allegations and the charges in the order to show cause to the respondent and explain them in nontechnical language. * * *"