# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANICEFARO GALEANA-MENDOZA,
                      *Petitioner,*

            v.

ALBERTO R. GONZALES, Attorney
General,
                      *Respondent.*

No. 04-73100

Agency No.
A77-125-684

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 6, 2006—San Francisco, California

Filed October 6, 2006

Before: David R. Thompson, Marsha S. Berzon, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Berzon;
Concurrence by Judge Callahan

17413

**COUNSEL**

Alan Diamante, Law Office of Alan R. Diamante, Los Angeles, California, for the petitioner.

Andrew C. Maclachlan (on the brief) and Margaret K. Taylor, U.S. Office Dept. of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for the respondent.

**OPINION**

BERZON, Circuit Judge:

As has been observed, "[t]ime has only confirmed Justice Jackson's powerful dissent in the *De George* case, in which he called 'moral turpitude' an 'undefined and undefinable standard.' " *Mei v. Ashcroft*, 393 F.3d 737, 741 (7th Cir. 2004) (quoting *Jordan v. De George*, 341 U.S. 223, 235 (1951) (Jackson, J. dissenting)). Nevertheless, we are once more called upon to determine whether a particular state crime qualifies as one "involving moral turpitude" under the Immigration and Nationality Act. As did the Board of Immigration Appeals ("BIA") in *In re Sanudo*, 23 I. & N. Dec. 968, 973 (2006), decided after submission of this petition for decision, we conclude that conviction for domestic battery under California Penal Code section 243(e) does not categorically qualify as a "crime involving moral turpitude."

I.

Anicefaro Galeana-Mendoza, a native and citizen of Mexico, entered the United States without inspection on or around

June 1, 1988.[1] Roughly eleven years later, California filed a single-count misdemeanor complaint against Galeana-Mendoza, alleging that on July 19, 1999, he committed the crime of battery by "willfully and unlawfully us[ing] force and violence upon the person of REYNA BAZAN, a person who is the mother of [his] children," in violation of California Penal Code section 243(e). Galeana-Mendoza subsequently pleaded nolo contendere and was convicted on that charge. California later filed another single-count misdemeanor complaint against Galeana-Mendoza, this time alleging that on October 28, 2000, Galeana-Mendoza committed the crime of battery by "willfully and unlawfully us[ing] force and violence upon the person of REINA BAZAN, a person WHO IS THE MOTHER OF HIS CHILD," in violation of California Penal Code section 243(e). Galeana-Mendoza again pleaded nolo contendere and again was convicted.

In the period between his two convictions, the Immigration and Naturalization Service ("INS")[2] began removal proceedings against Galeana-Mendoza by filing a notice to appear charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i),[3] as "[a]n alien present in the United States without being admitted or paroled." At a hearing before the IJ, Galeana-Mendoza conceded removability but sought cancellation of removal pursuant to § 1229b(b).

After Galeana-Mendoza's October 2000 conviction, the INS filed an additional charge of deportablity against

---

[1]He may also have entered earlier as well, but that does not matter for our present purposes.

[2]In 2002, "[t]he INS [was] abolished and its functions transferred to the Department of Homeland Security." *Masnauskas v. Gonzales*, 432 F.3d 1067, 1069 n.1 (9th Cir. 2005); *see* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), 6 U.S.C. §§ 101-557. We refer to the agency under its former name or as the "government."

[3]All statutory section references herein are to Title 8 of the U.S. Code, unless otherwise indicated.

Galeana-Mendoza. This charge alleged that Galeana-Mendoza is an alien who has been convicted of a "crime involving moral turpitude" under § 1182(a)(2)(A)(i)(I). In support of that allegation the charge relied upon Galeana-Mendoza's two convictions for violation of California Penal Code section 243(e). Galeana-Mendoza admitted the convictions and conceded removability under § 1182(a)(6)(A)(i), but contested his removability under § 1182(a)(2)(A)(i)(I) and sought cancellation of removal pursuant to § 1229b(b) and voluntary departure under § 1229c(b).

After the hearing, the IJ issued an oral decision holding that Galeana-Mendoza was (1) removable as an alien present in the United States "without being admitted or paroled," pursuant to § 1182(a)(6)(A)(i), as Galeana-Mendoza conceded he was; (2) removable as an alien who has been convicted of two "crime[s] involving moral turpitude," pursuant to § 1182(a)(2)(A)(i)(I); and (3) not eligible for cancellation of removal pursuant to § 1229b(b) because (a) he could not establish ten years of continuous presence in the United States immediately preceding the date of the service of his notice to appear, July 30, 1999, as the convictions for crimes involving moral turpitude cut off accrual of the requisite ten year period, *see* § 1229b(b)(1)(A), (d)(1); (b) he was not a person of "good moral character," *see* §§ 1101(f)(3) & 1229b(b)(1)(B); and (c) he had been convicted of an offense "involving a crime of moral turpitude," *see* §§ 1182(a)(2)(A) & 1229b(b)(1)(C).[4] Finally, given his convictions, the IJ found Galeana-Mendoza ineligible for voluntary departure because he could not establish a five-year period of good moral character immediately preceding his application for voluntary departure. *See* §§ 1101(f)(3) & 1229c(b)(1)(B).

---

[4]Each determination the IJ made regarding Galeana-Mendoza's eligibility for cancellation of removal — including the absence of ten years of continuous presence — turned on whether his convictions qualify as crimes involving moral turpitude, and falls with our conclusion that they do not.

The BIA affirmed the IJ in a streamlined, summary decision. *See* 8 C.F.R. § 1003.1(e)(4)(ii). Galeana-Mendoza now timely petitions for review of that decision. He maintains that his convictions for violation of California Penal Code section 243(e) do not qualify as "crime[s] involving moral turpitude" within the meaning of § 1182(a)(2)(A)(i)(I), and that those convictions therefore do not render him ineligible for cancellation of removal.[5]

## II.

Our jurisdiction to review BIA removal orders is limited by § 1252. Section 1252(a)(2)(C) states:

> except as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) . . . , or any offense covered by section 1227(a)(2)(A)(ii) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i).

Section 1252(a)(2)(D) provides, in turn, that "[n]othing in subparagraph . . . (C) . . . shall be construed as precluding review of . . . questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."[6] Whether a conviction under Califor-

---

[5]We do not have jurisdiction to review the IJ's voluntary departure determination, *see Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1141 (9th Cir. 2005) (citing § 1129c(f)), and Galeana-Mendoza does not seek such review.

[6]Section 1252(a)(2)(D) was added to Title 8 in May 2005 by the REAL ID Act of 2005, div. B, Pub. L. No. 109-13, § 106(a)(1)(A)(iii), 119 Stat. 231, 310, and applies here, see *id.* § 106(b), 119 Stat. at 311 (stating that amendments made by § 106(a), including the addition of § 1252(a)(2)(D), "shall take effect upon the date of the enactment of this division and shall apply to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment of this division").

nia Penal Code section 243(e) qualifies as a crime involving moral turpitude is a question of law excepted from the jurisdiction-stripping provisions of § 1252(a)(2)(C). *See Notash v. Gonzales*, 427 F.3d 693, 696 (9th Cir. 2005). We therefore have jurisdiction to decide the question.

Because the BIA streamlined this case, we review the IJ's oral decision as the final agency action. *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 849 (9th Cir. 2003). We review "the question of whether a state statutory crime constitutes a crime involving moral turpitude" de novo. *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1017 (9th Cir. 2005).

## III.

**[1]** An inadmissible or deportable alien is eligible for cancellation of removal if the alien:

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

> (B) has been a person of good moral character during such period;

> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title . . . ; and

> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

§ 1229b(b)(1). An alien cannot establish good moral character as required by § 1229b(b)(1)(B) if he has, among other things, been convicted of a "crime involving moral turpitude,"

§ 1182(a)(2)(A)(i)(I); *see* § 1101(f)(3);[7] section 1229b(b)(1)(C) likewise renders an alien ineligible for cancellation of removal if he has been convicted of such a crime. *See* §§ 1182(a)(2)(A)(i)(I) & 1227(2)(A)(ii).[8] The upshot of these statutory cross-references is that if Galeana-Mendoza's convictions qualify as crimes involving moral turpitude, he is ineligible for the relief he seeks.

We determine whether a conviction qualifies as one involving moral turpitude by applying the categorical and modified categorical approaches, first enunciated in *Taylor v. United States*, 495 U.S. 575 (1990). *See Cuevas-Gaspar*, 430 F.3d at 1017. Under the categorical approach, we look "only to the fact of conviction and the statutory definition of the prior offense," and determine whether "the full range of conduct proscribed by the statute constitutes a crime of moral turpi-

---

[7]Section 1101(f) provides, in relevant part:

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—
>
> . . .
>
> (3) a member of one or more of the classes of persons, whether inadmissible or not, described in . . . subparagraphs (A) and (B) of section 1182(a)(2) of this title . . . if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period.

§ 1101(f)(3). Section 1182(a)(2)(A)(i)(I), one of the cross reference subsections, "describe[s]" the class of "alien[s] convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime."

[8]Section 1227(a)(2)(A)(ii) renders removable "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial."

tude." *Cuevas-Gaspar*, 430 F.3d at 1017 (internal quotation marks omitted). If it does not, we apply the modified categorical approach, under which we may " 'look beyond the language of the statute to a narrow, specified set of documents that are part of the record of conviction, including the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings,' " *id.* at 1020 (quoting *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004)), to determine whether Galeana-Mendoza was in fact convicted of an offense that qualifies as a crime involving moral turpitude, *see id.*; *see also Notash*, 427 F.3d at 696-97 (delineating modified categorical approach). "We do not, however, 'look beyond the record of conviction itself to the particular facts underlying the conviction.' " *Cuevas-Gaspar*, 430 F.3d at 1020 (quoting *Tokatly*, 371 F.3d at 620).

## A.

**[2]** We have generally divided crimes involving moral turpitude into two basic types: "those involving fraud and those involving grave acts of baseness or depravity." *Carty v. Ashcroft*, 395 F.3d 1081, 1083 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 346 (Oct. 3, 2005); *see also Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994).[9] California Penal Code section 243(e) does not touch on fraudulent activity and therefore can qualify as a crime involving moral turpitude only if it involves "grave acts of baseness or depravity." To determine whether it does, we consider the intrinsic or inherent nature

---

[9]Our understanding of the general meaning of this amorphous phrase does not vary materially from that of the BIA. *See In re Danesh*, 19 I. & N. Dec. 669, 670 (1988) ("Moral turpitude is a nebulous concept, which refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, contrary to the rules of morality and the duties owed between man and man, either one's fellow man or society in general."); *see also Mei*, 393 F.3d at 739 ("Since the Board hasn't done anything to particularize the meaning of 'crime involving moral turpitude,' giving *Chevron* deference to its determination of the meaning has no practical significance.").

of the crime. *See Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1018 (9th Cir. 2005) ("Where an act is only statutorily prohibited, rather than inherently wrong, the act generally will not involve moral turpitude."); *Gonzalez-Alvarado*, 39 F.3d at 246 (noting that even where evil intent is not a statutory requirement, "a crime nevertheless may involve moral turpitude if such intent is implicit in the nature of the crime" (internal quotation marks omitted)). And, "in determining the categorical reach of a state crime, we consider not only the language of the state statute, but also the interpretation of that language in judicial opinions." *See Ortega-Mendez*, 450 F.3d at 1016.

**[3]** With these rather hazy principles in mind, we turn to the statute in question. California Penal Code section 243(e) provides, in relevant part:

> (1) When a battery is committed against a spouse, a person with whom the defendant is cohabiting, a person who is the parent of the defendant's child, former spouse, fiancé, or fiancée, or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship, the battery is punishable by a fine not exceeding two thousand dollars . . . , or by imprisonment in a county jail for a period of not more than one year, or by both that fine and imprisonment.

CAL. PENAL CODE § 243(e)(1) (West 2000 & Supp. 2005). Battery is defined by California Penal Code section 242 as "any willful and unlawful use of force or violence upon the person of another."

**[4]** We recently observed that "[l]ooking at how California courts have interpreted the phrase 'use of force or violence' in section 242, it becomes evident that the phrase is a term of art, requiring neither a force capable of hurting or causing injury nor violence in the usual sense of the term." *Ortega-*

*Mendez*, 450 F.3d at 1016. As one California court has explained: "[e]ven though the statutory definition of battery requires 'force or violence' (Pen.Code, § 242), this has the special legal meaning of a harmful or offensive touching." *People v. Page*, 123 Cal. App. 4th 1466, 1473 n.1 (2004); *see also People v. Martinez*, 3 Cal. App. 3d 886, 889 (1970) ("Any harmful or offensive touching constitutes an unlawful use of force or violence."). To qualify as a battery under section 242, "*force* against the person is enough; it need not be violent or severe, *it need not cause bodily harm or even pain*, and it need not leave any mark." *People v. Mansfield*, 200 Cal. App. 3d 82, 88 (1988) (second emphasis added) (quoting 1 WITKIN, CALIFORNIA CRIMES: CRIMES AGAINST THE PERSON § 258 (1963)); *see People v. Colantuono*, 7 Cal. 4th 206, 214 n.4 (1994); *People v. Ausbie*, 123 Cal. App. 4th 855, 860 n.2 (2004); *People v. Lindsay*, 209 Cal. App. 3d 849, 855 (1989); *see also* CHARLES E. TORCIA, 2 WHARTON'S CRIMINAL LAW § 177 (15th ed. West 2006) ("A defendant commits a battery when he . . . shoves, pushes, or touches [another person] in an angry, indecent, rude, insolent, or hostile manner.").

In accord with the California courts' interpretation of the battery statute, the standard California jury instruction defines "force and violence" for the purposes of that statute as follows:

> As used in the foregoing, the words "force" and "violence" are synonymous and mean any [unlawful] application of physical force against the person of another, even though it causes no pain or bodily harm or leaves no mark and even though only the feelings of such person are injured by the act. The slightest [unlawful] touching, if done in an insolent, rude, or an angry manner, is sufficient.

> It is not necessary that the touching be done in actual anger or with actual malice; it is sufficient if it was unwarranted and unjustifiable.

> The touching essential to a battery may be a touching of the person, of the person's clothing, or of something attached to or closely connected with the person.

California Jury Instructions—Criminal 16.141 (2006).

**[5]** In addition, although the offense of battery carries a specific intent element, "[a] person need not have an intent to injure to commit a battery[,] [h]e only needs to intend to commit the act." *Mansfield*, 200 Cal. App. 3d at 88. Finally, California Penal Code section 243(e) adds to battery as defined by section 242 only the element of having been "committed against a spouse, a person with whom the defendant is cohabiting, a person who is the parent of the defendant's child, former spouse, fiancé, or fiancée, or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship," CAL. PENAL CODE § 243(e)(1).

Our question, then, is whether given these elements, the full range of conduct proscribed by section 243(e) involves moral turpitude. We hold that it does not.

**[6]** The moral turpitude category includes, of course, as "grave acts of baseness or depravity," many use-of-physical-force offenses, including those that have as an element the infliction of injury upon a person with whom the perpetrator has a particular, special relationship. *See Grageda v. INS*, 12 F.3d 919, 922 (9th Cir. 1993) (holding that the "willful[ ] inflict[ion] upon . . . [one's] spouse, . . . corporal injury resulting in a traumatic condition" is a crime involving moral turpitude); *Guerrero de Nodahl v. INS*, 407 F.2d 1405, 1406-07 (1969) (holding that the offense of "[willfully] inflicting 'cruel or inhuman corporal punishment or injury' upon a child" is a crime involving moral turpitude). Unlike the statutory sections considered in *Grageda* and *Guerrero de Nodahl*, however, section 243(e) requires no injury at all.

**[7]** The government notes that, even with no injury element, section 243(e) touches upon relationships of a special, domestic nature. This element the government maintains, brings the offense within the category of crimes involving moral turpitude. We disagree. Given that force that is neither violent nor severe and that causes neither pain nor bodily harm may constitute battery, the relationship element of section 243(e)(1) is not sufficient to, by itself, transform *every* battery under section 243(e) into a crime categorically grave, base, or depraved.

*Grageda*, a case concerning "[the] willful[ ] inflict[ion] upon . . . [one's] spouse, . . . corporal injury resulting in a traumatic condition," 12 F.3d at 921, does not detract from this conclusion. *Grageda* noted that the relationship between spouses "makes the crime of spousal abuse different from violence between strangers or acquaintances, which, depending on the wording of the statute, is not necessarily a crime of moral turpitude." *Id.* at 922. We reasoned there that "when a person beats his or her spouse severely enough to cause 'a traumatic condition,' he or she has committed an act of baseness or depravity contrary to accepted moral standards," and noted that "this conclusion follows from *Guerrero de Nodahl* because the injurious act under [the statute] . . . must be willful, meaning that the person intended to cause the harm. *Id.* (discussing California Penal Code section 273.5).[10] *Grageda*

---

[10]*Grageda*'s view of the specific intent requirement of California Penal Code section 273.5 is arguably at variance with the California courts' construction of that requirement, according to which the statute "requires only the mens rea of intending to do the assaultive act." *People v. Thurston*, 71 Cal. App. 4th 1050, 1055 (1999). *Guerrero de Nodahl*, unlike *Grageda*, recognized that under California law, the term "willfully" "when applied to the intent to which an act is done . . . , implies simply a purpose or willingness to commit the act . . . . [and] does not require any intent to . . . injure another." 407 F.2d at 1406 (internal quotation marks omitted). We held in *Guerrero de Nodahl* that *regardless* of the intent element, "inflicting cruel or inhuman punishment or injury upon a child is so offensive to American ethics that the fact that it was done purposely or willingly (the California definition of 'willful') ends debate on whether moral turpitude was involved." *Id.* at 1406-07. As *Grageda* relied on *Guerrero de Nodahl*, the intent element asserted as inhering in section 273.5 could not have been determinative in *Grageda*.

and *Guerrero de Nodahl*, taken together, indicate that a special relationship can turn a crime involving violence into one involving moral turpitude. The two cases do not, however, establish that a special relationship alone suffices to turn a crime *not* necessarily involving violence or injury into one involving moral turpitude.

Some — perhaps the majority — of batteries against the persons listed in section 243(e) will cause or be capable of causing injury, or will otherwise be so aggravated in nature that they can be characterized as "involving grave acts of baseness or depravity." But some acts covered by section 243(e) simply cannot be so categorized. For example, throwing a cup of cola on the lap of someone to whom one is or had been engaged, slighting shoving a cohabitant, or poking the parent of one's children rudely with the end of a pencil are all "offensive touching[s]" of qualifying individuals and can constitute domestic battery under section 243(e). None of these acts, however, can be characterized as inherently grave, base, or depraved. Adding to these acts an intent to commit them does not change that conclusion. *See Mei*, 393 F.3d at 741 ("If the crime is a serious one, the deliberate decision to commit it can certainly be regarded as the manifestation of an evil intent. Conversely, if the crime is trivial, even a deliberate intent to commit it will not demonstrate an intent so 'evil' as to make the crime one of moral turpitude."); *see also Rodriguez-Herrera v. INS*, 52 F.3d 238, 240 (9th Cir. 1995).

[8] We hold that, because it lacks an injury requirement and includes no other inherent element evidencing "grave acts of baseness or depravity," California Penal Code section 243(e) does not qualify as a crime categorically involving moral turpitude.

## B.

Our reasoning is entirely consistent with that of a recent BIA precedent decision, *In re Sanudo*, which, as mentioned,

was issued after the submission of this petition for decision. In that case, the BIA determined that "the California offense of domestic battery [, under California Penal Code section 243(e),] does not qualify categorically as a crime involving moral turpitude." *In re Sanudo*, 23 I. & N. Dec. at 973.[11] Employing reasoning in large part mirroring our own, *In re Sanudo* explains:

> It has long been recognized that not all crimes involving the injurious touching of another reflect moral depravity on the part of the offender, even if they may carry the label of assault, aggravated assault, or battery under the law of the relevant jurisdiction. . . .

> At the same time, we have recognized that assault and battery offenses may appropriately be classified as crimes of moral turpitude if they necessarily involved aggravating factors that significantly increased their culpability. . . . [A]ssault and battery offenses that necessarily involved the *intentional* infliction of *serious* bodily injury on another have been held to involve moral turpitude because such intentionally injurious conduct reflects a level of immorality that is greater than that associated with a simple offensive touching.

> Moreover, it has often been found that moral turpitude necessarily inheres in assault and battery offenses that are defined by reference to the infliction of bodily harm upon a person whom society views as deserving special protection, such as a

---

[11]*In re Sanudo*, a published disposition, stands in contrast to prior unpublished, non-precedential BIA decisions holding that violation of California Penal Code section 243(e) constitutes a crime of moral turpitude. *See, e.g.*, *In re Tunche-Hernandez*, 2004 WL 2374793 (BIA 2004); *In re Castro-Garcia*, 2004 WL 2374372 (BIA 2004).

child, domestic partner, or peace officer, because the intentional or knowing infliction of injury on such persons reflects a degenerate willingness on the part of the offender to prey on the vulnerable or to disregard his social duty to those who are entitled to his care and protection.

. . . . The minimal conduct necessary to complete such an offense [of battery] in California is simply an intentional "touching" of another without consent. Thus, one may be convicted of battery . . . without using violence and without injuring or even intending to injure the victim. Such an offence . . . does not implicate any aggravating dimension that would lead us to conclude that it is a crime involving moral turpitude.

Moreover, in each of the aforementioned cases that involved battery offenses committed against the members of a protected class, the crimes at issue were defined by statute to require proof of the actual infliction of some tangible harm on a victim.

. . . . In the absence of admissible evidence reflecting that the respondent's offense occasioned actual or intended physical harm to the victim, . . . the existence of a current or former "domestic" relationship between the perpetrator and the victim is insufficient to establish the morally turpitudinous nature of the crime.

23 I. & N. Dec. at 971-73 (citations omitted). We are thus in accord with the present views of the BIA with regard to the matter before us, while the IJ decision under review is not.

In sum, we conclude that the full range of conduct proscribed by California Penal Code section 243(e) does not fall

within the meaning of a "crime involving moral turpitude" under the INA.

C.

The government maintains that this conclusion does not dispose of the case before us because, under the modified categorical approach, Galeana-Mendoza's convictions qualify as crimes involving moral turpitude. The government points us to the 1999 and 2000 criminal complaints, each of which specifies that Galeana-Mendoza committed battery on the mother of his children using "force and violence."

As we have explained, both "force" and "violence," in the context of California battery law, require only the slightest touching, if rudely or angrily accomplished. So the "force and violence" specification is insufficient to establish, on its own, that either of Galeana-Mendoza's convictions was for a crime involving moral turpitude. As we have also explained, adding the special relationship between Galeana and the mother of his children does not alone have the effect of turning a battery under California Penal Code section 243(e) into a crime involving moral turpitude.

The government offers nothing more to establish that Galeana-Mendoza's crimes were ones involving moral turpitude. We therefore hold that, on this record, it has failed to carry its burden under the modified categorical approach. *See Notash*, 427 F.3d at 697.[12]

---

[12]Galeana-Mendoza maintains that his dual convictions under California Penal Code section 243(e) do not qualify as "crime[s] of domestic violence" within the meaning of § 1227(a)(2)(E)(i). Our recent decision in *Ortega-Mendez* held that battery under California Penal Code section 242 does not categorically qualify as a "crime of domestic violence." *See* 450 F.3d at 1014. This holding was recently relied upon by the BIA to hold that battery under section 243(e) also does not categorically so qualify. *In re Sanudo*, 23 I. & N. Dec. at 973 74. The IJ did not, however, find that Galeana-Mendoza's convictions were crimes of domestic violence, so the issue is not pertinent to this petition for review, and we do not consider it further.

## CONCLUSION

**[9]** For the foregoing reasons, we hold that Galeana-Mendoza's convictions under California Penal Code section 243(e), for battery upon the person of the mother of his children, are not "crime[s] involving moral turpitude" within the meaning of § 1182(a)(2)(A)(i)(I) and § 1227(a)(2)(A). The IJ's determination that Galeana-Mendoza is ineligible for cancellation of removal under § 1229b(b) on that ground was therefore in error.

We grant Galeana-Mendoza's petition and remand for further proceedings.

**PETITION GRANTED; REMANDED.**

---

CALLAHAN, Circuit Judge, concurring:

I concur in Judge Berzon's opinion, but write separately to note what we have not held. We hold, as did the Board of Immigration Appeals ("BIA") in *In re Sanudo*, 23 I. & N. Dec. 968, that a violation of California Penal Code 243(e) is not inherently a "crime involving moral turpitude." We are particularly influenced by the California court's determinations that a conviction under this statute does not require either a showing of bodily harm or pain, or that the perpetrator intended to injure; he "only needs to intend to commit the act." *People v. Mansfield*, 200 Cal. App. 3d 82, 88 (1988).

We also conclude that a violation of California Penal Code 243(e) is not a "crime involving moral turpitude" under the categorical approach, and determine that, on this record, the government has not shown that the application of the modified categorical approach produces a different result. *See Taylor v. United States*, 495 U.S. 575 (1990) (enunciating the categorical and modified categorical approaches), *see also*

*Tokatly v. Ashcroft*, 371 F.3d 613, 620-24 (9th Cir. 2004) (applying the categorical and modified categorical methodology and defining what documents may be considered under the modified categorical approach). However, we do not hold that the application of the modified categorical approach in another case could not result in a determination that the particular crime involved moral turpitude. Indeed, there may well be instances where a review of the limited documents that may be considered under the modified categorical approach will disclose actual injury and intent.[1] These would establish, coupled with the existence of a domestic relationship, a crime involving moral turpitude.

Finally, we do not hold that the fact that the victim of a crime deserves special protection — such as a domestic partner or a peace officer — is not a relevant or even critical factor in determining whether a crime involves moral turpitude. Rather, I read our opinion as holding only that because of the way in which California has defined the elements of a violation of California Penal Code 243(e), a conviction for violation this statute is not categorically a "crime involving moral turpitude" as set forth in 8 U.S.C. § 1182(a)(2)(A)(I)(1).

---

[1]I do not read the opinion as prohibiting the government in this case from seeking leave on remand to supplement the record with appropriate documents in an attempt to show actual injury and intent.