**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MOISES EDUARDO MORALES-GARCIA,
                        *Petitioner,*

            v.

ERIC H. HOLDER JR.,* Attorney
General,
                        *Respondent.*

No. 07-70400

Agency No.
A077-131-757

OPINION

On Petition for Review of an Order
of the
Board of Immigration Appeals

Argued and Submitted
June 12, 2008—San Francisco, California

Filed June 3, 2009

Before: A. Wallace Tashima, M. Margaret McKeown, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Tashima

---

* Eric H. Holder Jr., is substituted for his predecessor Michael B.
Mukasey, as Attorney General, pursuant to Fed. R. App. P. 43(c)(2).

## COUNSEL

John M. Pope, Stender & Pope, Phoenix, Arizona, for the petitioner.

Lindsay E. Williams, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

TASHIMA, Circuit Judge:

Moises Eduardo Morales-Garcia ("Morales") petitions for review of a final order of removal based on the Immigration Judge's ("IJ") and Board of Immigration Appeals' ("BIA") determination that his conviction under California Penal Code § 273.5(a) is categorically a crime involving moral turpitude ("CIMT"), precluding cancellation of removal under § 240A(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(b). We have jurisdiction under 8 U.S.C. § 1252(a)(1) (providing for judicial review of a final order of removal) and 8 U.S.C. § 1252(a)(2)(D) (providing for judicial review of constitutional and legal questions raised by individuals found removable based on criminal activity). *See Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1056-57 (9th Cir. 2006). Because we hold that § 273.5(a) is not categorically a CIMT, we grant the petition for review and remand the case to the BIA for further proceedings.

## BACKGROUND

Morales, a native and citizen of Mexico, entered the United States without inspection near San Ysidro, California, in September, 1986. In 2006, the Department of Homeland Security ("DHS") served a Notice to Appear ("NTA") on Morales, alleging that he was subject to removal on two grounds: first, for being an alien present in the United States without being admitted or paroled, *see* 8 U.S.C. § 1182(a)(6)(A)(i), and second, for having been convicted of a CIMT, *see id.* § 1182(a)(2)(A)(i)(I). The NTA alleged that on April 10, 2003, Morales was convicted in California Superior Court "for the offense of corporal injury to spouse/cohabitant/former cohabitant/child's parent, a Felony, in violation of Section 273.5(a) of the California Penal Code for which the term of imprisonment was two . . . years . . . ."

At his hearing before the IJ, Morales conceded removability; however, he denied the fact of his conviction under Cal. Penal Code § 273.5. The government adduced a certified copy of an abstract of judgment and prison commitment order, showing both that Morales was convicted of the offense and that he was sentenced to two years' imprisonment. According to those documents, Morales pleaded guilty to a violation of § 273.5(a), and the court imposed a low term of 2 years, doubled to 4 years, under California's habitual offender statute, Cal. Penal Code § 667(b)-(i).[1] The record also contains a copy of the criminal complaint, which alleges:

> On or about the 23rd day of March, 2003, in the County of El Dorado, the crime of CORPORAL INJURY TO SPOUSE/COHABITANT/FORMER COHABITANT/CHILD'S PARENT, in violation of **PENAL CODE SECTION 273.5(a)**, a felony, was committed by MOISES EDUARDO MORALES, who did willfully and unlawfully inflict corporal injury resulting in a traumatic condition upon Martha Adriana Salazar, who was cohabiting with defendant.

The IJ sustained the factual allegations in the NTA and, based on that determination, the IJ also sustained the charge of removability on the ground that Morales had been convicted of a CIMT.

At the hearing, Morales also raised the possibility that he was eligible for a waiver of inadmissibility under INA § 212(h), 8 U.S.C. § 1182(h). Instead of simply requesting a § 212(h) waiver, however, Morales' asserted that the waiver, if granted, would make him eligible for cancellation of removal under 8 U.S.C. § 1229b(b). The IJ clarified this argument for the government in the following exchange:

---

[1]The court also imposed a $500 parole restitution fine under Cal. Penal Code § 1202.45, a domestic violence fee of $200, and a $100 payment to the Women's Shelter.

> DHS: Well, I'm not sure where the respondent's counsel is going with this in regards to the [conviction under Cal. Penal Code §] 273.5.

> IJ: That's why I assume it was, that's why I assumed you would like to brief concurrently. What he's saying is he can tender cancellation with a 212(h) waiver . . . .

Following briefing on the issue by both parties, the IJ denied Morales' request for cancellation of removal based on a waiver of inadmissibility. The IJ then entered an order of removal.

Morales timely appealed to the BIA, which dismissed the appeal in a per curiam order. On the issue of whether § 273.5(a) qualified as a CIMT, the BIA affirmed the IJ's reliance on *Grageda v. INS*, 12 F.3d 919 (9th Cir. 1993), in which we held that spousal abuse under § 273.5(a) was a CIMT. Although the BIA recognized that *Grageda* limited its holding to spousal abuse, it held that *Grageda*'s reasoning applied "with equal force to abuse of a cohabitant . . . who is in a relationship of trust, and may be dependent upon the perpetrator." The BIA also affirmed the IJ's determination that a waiver of inadmissibility under INA § 212(h) would not render Morales eligible for cancellation of removal. Morales filed a timely petition for review of the BIA's decision.

## STANDARD OF REVIEW

"[W]e review *de novo* the BIA's determination of questions of law, except to the extent that deference is owed to its interpretation of the governing statutes and regulations." *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1011 (9th Cir. 2006); *see also Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 651 (9th Cir. 2004). We recently clarified that the BIA's determination that the petitioner has committed a CIMT is comprised of two separate inquiries. *See Marmolejo-Campos v. Holder*,

558 F.3d 903. 907 (9th Cir. 2009) (en banc). "First, the BIA must determine what offense the petitioner has been convicted of committing." *Id.* Because "[t]he BIA has no special expertise by virtue of its statutory responsibilities in construing state or federal criminal statutes . . . we review the BIA's finding regarding the specific act for which the petitioner was convicted *de novo*." And "[s]econd, once the [BIA] has identified the petitioner's offense, it must determine whether such conduct is a 'crime involving moral turpitude' as defined in the applicable section of the INA . . . requir[ing] the [BIA] to apply the definition of the term 'moral turpitude' and to determine whether the petitioner's conduct meets such definition." *Id.* But "[t]he Board's answer to the second question requires a different standard of review." *Id.* at 908. If the BIA has determined that the applicable conduct is morally turpitudinous in a precedential decision, "we apply *Chevron* deference regardless of whether the order under review is the precedential decision itself or a subsequent unpublished order that relies upon it." *Id.* at 911. (citation omitted). Where, however, the BIA resolves an appeal in an unpublished decision, as in this case, we defer to its interpretations of the INA not resolved by prior precedential decisions only to the extent of its thoroughness and overall persuasiveness. *Id.* at 909. *See also Garcia-Quintero*, 455 F.3d at 1014-15 (noting that the court owes *Skidmore* deference to a non-precedential BIA opinion's interpretation of the INA or its regulations) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

## DISCUSSION

Morales contends that the BIA erred in affirming the IJ's determination that his conviction under Cal. Penal Code § 273.5(a) qualifies as a CIMT, both for purposes of determining his inadmissibility, *see* 8 U.S.C. § 1182(a)(2)(A)(i)(I), and his ineligibility for cancellation of removal, *see id.* § 1229b(b)(1)(C). An alien convicted of a CIMT is ineligible for cancellation of removal by virtue of the conviction itself, *see id.* § 1229b(b)(1)(C), and because such a conviction pre-

cludes a finding of good moral character required by § 1229b(b)(1)(B). *See Galeana-Mendoza*, 465 F.3d at 1057 (noting that "[a]n alien cannot establish good moral character as required by § 1229b(b)(1)(B) if he has, among other things, been convicted of a 'crime involving moral turpitude' ") (citing 8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A)(i)(I)). A finding of error in Morales' favor would therefore remove the statutory bar to the relief he seeks. "To determine whether a conviction is for a crime involving moral turpitude, we apply the categorical and modified categorical approaches established by the Supreme Court in *Taylor v. United States* . . . ." *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1067 (9th Cir. 2007) (en banc) (citing *Taylor v. United States*, 495 U.S. 575, 599-602 (1990)).

## I. Categorical Approach

### A. *Definition of crimes involving moral turpitude*

**[1]** "Whether a crime involves moral turpitude is determined by the statutory definition or by the nature of the crime and not by the specific conduct that resulted in the conviction." *Id.* at 1070 (citation and quotation marks omitted). The categorical approach requires that we "compare the elements of the statute of conviction to the generic definition [of moral turpitude], and decide whether the conduct proscribed . . . is broader than, and so does not categorically fall within, this generic definition." *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1163 (9th Cir. 2006) (citation and quotation marks omitted). We have observed that "there are no statutorily established elements for a crime involving moral turpitude." *Navarro-Lopez*, 503 F.3d at 1068. Its meaning left to the BIA and courts to develop through case-by-case adjudication. *See Nicanor-Romero v. Mukasey*, 523 F.3d 992, 997 (9th Cir. 2008), *overruled on other grounds by Marmolejo-Campos*, 2009 WL 530950. We have "defined 'moral turpitude' as involving conduct that is inherently base, vile, or depraved, and contrary to the private and social duties man owes to his

fellow men or to society in general." *Navarro-Lopez*, 503 F.3d at 1068;[2] *see also In re Sejas*, 24 I. & N. Dec. 236, 237 (BIA 2007) (applying a similar definition). The BIA has added that "[t]he essence of moral turpitude is an evil or malicious intent[,]" and, therefore, "[t]he test to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind." *In re Tran*, 21 I. & N. Dec. 291, 293 (BIA 1996). Under the categorical approach, "the question is not whether *some* of the conduct prohibited by [the statute] is morally turpitudinous," but rather "whether *all* of the conduct prohibited by [the statute] is morally turpitudinous." *Nicanor-Romero*, 523 F.3d at 999. With this definition in mind, we now turn to an examination of the statute in question.

## B. *Cal. Penal Code § 273.5(a)*

When determining the reach of the state criminal statute at issue, we consider not only the text of the statute, but also state court interpretations of the statutory language. *See Galeana-Mendoza*, 465 F.3d at 1058; *Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1016 (9th Cir. 2006). Although the California Supreme Court has yet to interpret § 273.5(a), numerous California Court of Appeal decisions inform our analysis.[3]

---

[2]Courts have also consistently held that crimes involving fraud are morally turpitudinous. *See Nicanor-Romero*, 523 F.3d at 998; *Navarro-Lopez*, 503 F.3d at 1074 (Reinhardt, J., concurring and writing for the majority). There is no suggestion here, however, that the crime at issue in this case involves fraud.

[3]We recently held, in the context of determining whether a state conviction was a crime of violence under U.S.S.G. § 4B1.2(a)(1), that courts may rely on an opinion rendered by an intermediate state appellate court to determine the reach of the state statute. *See United States v. Taylor*, 529 F.3d 1232, 1237 (9th Cir. 2008). The logic of *Taylor* applies with equal force here: "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (quoting *West v. AT & T*, 311 U.S. 223, 237 (1940)).

The statute provides, in relevant part:

> (a) Any person who willfully inflicts upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000) or by both that fine and imprisonment.
>
> . . .
>
> (c) As used in this section, "traumatic condition" means a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature, caused by physical force.
>
> . . .

Cal. Penal Code § 273.5. In accord with the California courts' interpretation of this statute, the standard California jury instruction lists the following three elements of the offense:

> 1.  A person inflicted bodily injury upon [[his] [her] [former] spouse] [a [former] cohabitant] [the [mother] [or] [father] of [his] [her] child];
>
> 2.  The infliction of bodily injury was willful [and unlawful]; and
>
> 3.  The bodily injury resulted in a traumatic condition.

CALJIC 9.35, Cal. Jury Instructions — Criminal (2008).

"The term 'cohabitant' has been interpreted 'broadly' to refer to those living together in a substantial relationship—one manifested, minimally, by permanence and sexual or amorous intimacy." *People v. Taylor*, 12 Cal. Rptr. 3d 693, 696 (Ct. App. 2004) (citation and quotation marks omitted). However, "[t]he element of 'permanence' . . . refers only to the underlying 'substantial relationship,' not to the actual living arrangement." *Id.* (citation and quotation marks omitted). Thus, a victim who lives with the defendant "in his car 'for a while' after having stayed with her aunt[,]" and during "periods of time when she was homeless and had no other place to stay[,]" is a cohabitant. *Id.* at 697. A defendant may simultaneously cohabitate with two different individuals in two different locations at the same time under California law. *See People v. Moore*, 52 Cal. Rptr. 2d 256, 264 (Ct. App. 1996). The term also encompasses a relationship in which the defendant lived with the victim for about half the time during the three months preceding the assault, but stayed in at least three other locations, took his belongings with him when he left, did not have a key to the residence, frequently went out alone in the evenings, had infrequent sex with the victim, and did not return the victim's romantic feelings. *See People v. Holifield*, 252 Cal. Rptr. 729, 730-31, 735 (Ct. App. 1988).

### C.   *Categorical analysis of § 273.5(a)*

**[2]** We now compare the elements of § 273.5(a) to the generic definition of moral turpitude provided above. We have previously held that spousal abuse under § 273.5(a) is a crime involving moral turpitude. *See Grageda*, 12 F.3d at 922. As we explain below, however, *Grageda* does not dictate the result in this case because it limited its holding to a portion of § 273.5(a) rather than employing the categorical approach. Thus, we must decide the open question whether § 273.5(a) is categorically a CIMT.

### 1.   *Grageda*

First, we explain why we are not bound by the *Grageda* decision. We recognize, as a general matter, that "a three-

judge panel may not overrule a prior decision of the court." *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). The term "decision," however, encompasses only those issues that are raised or discussed: "[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions." *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985); *see also Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (declining to follow prior cases in which the issue at hand had not been "squarely addressed"); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) (noting that "where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit") (internal quotation marks and citation omitted).

**[3]** *Grageda* resolved the following issue: "whether spousal abuse is a crime of moral turpitude upon the basis of which an alien can be deported." *Grageda*, 12 F.3d at 920. It thus discussed only that portion of the statute criminalizing "the willful infliction of injury upon a spouse . . . ." *Id.* Although the opinion specifically noted that "[t]his section also makes the willful infliction of a corporal injury upon 'any person of the opposite sex with whom he or she is cohabiting' a felony," *id.* at 921-22 n.1, it limited the scope of its analysis to spouses only, explicitly stating, "[w]e do not address the question of whether cohabiting abuse is a crime of moral turpitude," *id.* Under that limited inquiry, *Grageda* held only that "spousal abuse under section 273.5(a) is a crime of moral turpitude." *Id.* at 922. The narrowness of this holding, intentionally restricted to only one of five types of potential victims covered by the statute, has repeatedly been recognized in our subsequent decisions. *See, e.g.*, *Fernandez-Ruiz*, 468 F.3d at 1165 (describing *Grageda* as a case about "spousal abuse"); *Gonzalez Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994) (same); *see also Nicanor-Romero*, 523 F.3d at 1013 (Bybee, J., dissenting) (same); *In re Tran*, 21 I. & N. Dec. at 293 (same). Simply put, *Grageda* does not address whether abuse

of cohabitants or others covered by the statute qualifies as a CIMT. Thus, under the categorical approach, we must consider those portions of the statute — the full range of conduct covered by § 273.5(a) — that *Grageda*, by its express terms, declined to reach.

## 2.   *Applying the categorical analysis*

**[4]** Section 273.5(a) includes in its list of covered victims a "former cohabitant." This factor alone makes the offense virtually indistinguishable from the run-of-the-mill assault. Few would argue that former cohabitants — however transitory that cohabitation — are in a special relationship of trust such as to make an assault by one on the other a CIMT. Our past decisions make clear that assault and battery, without more, do not qualify as CIMTs. *See Fernandez-Ruiz*, 468 F.3d at 1165 (recognizing that "simple assault" does not involve moral turpitude); *Galeana-Mendoza*, 465 F.3d at 1061 (holding that domestic battery under Cal. Penal Code § 243(e) is not categorically a CIMT); *see also In re Sejas*, 24 I. & N. Dec. at 237 (acknowledging the general rule that "a simple assault and battery offense does not involve moral turpitude"); *In re Fualaau*, 21 I. & N. Dec. 475, 476, 478 (BIA 1996) (en banc) (holding that conviction under an assault statute involving bodily harm did not rise to the level of a CIMT without an "aggravating dimension"). Such offenses, however, may transform into CIMTs "if they necessarily involved aggravating factors that significantly increased their culpability[,]" such as "the *intentional* infliction of *serious* bodily injury on another" or "infliction of bodily harm upon a person whom society views as deserving special protection . . . ." *Galeana-Mendoza*, 465 F.3d at 1061 (emphasis in original) (quoting *In re Sanudo*, 23 I. & N. Dec. 968, 973 (BIA 2006)); *see also In re Sejas*, 24 I. & N. Dec. at 237 (recognizing identical factors).

Otherwise non-morally turpitudinous conduct targeted at a victim with whom the defendant has a special relationship

may transform a crime into one involving moral turpitude. In *Grageda*, for example, we held that "when a person willfully beats his or her spouse severely enough to cause 'a traumatic condition,' he or she has committed an act of baseness or depravity contrary to accepted moral standards." *Grageda*, 12 F.3d at 922. In reaching that result, we cited a case involving child abuse, *Guerrero de Nodahl v. INS*, 407 F.2d 1405 (9th Cir. 1969), for its pronouncement that the infliction of cruel or inhuman corporal punishment or injury upon a child is "so offensive to American ethics" that it "ends debate on whether moral turpitude was involved." *Id.* at 1406-07. Drawing a parallel between that case and spousal abuse under § 273.5, we reasoned that "an adult is not as helpless of a victim as a child; nevertheless, a spouse is committed to a relationship of trust with, and may be dependent upon, the perpetrator." *Grageda*, 12 F.3d at 922. *Accord In re Tran*, 21 I. & N. Dec. at 294 (extending *Grageda* to the infliction of harm upon the parent of the perpetrator's child because the relationship between perpetrator and victim is one of trust and possible dependency).

**[5]** *Grageda* reasoned that it is particularly morally objectionable to beat a person "[1] committed to a [2] relationship of trust with, and . . . [3] dependent upon, the perpetrator." *Grageda*, 12 F.3d at 922. In *In re Tran*, the BIA, building upon *Grageda*, held that § 273.5(a) is categorically a CIMT. It reasoned, in relevant part, that "[a] person who cohabits with or is the parent of the offender's child maintains a relationship of a familial nature with the perpetrator of the harm" that approximates a spousal relationship. *In re Tran*, 21 I. & N. Dec. at 294. Not all of the relationships listed in § 273.5(a), however, fit comfortably under the rationale of *Grageda* and *In re Tran*. For example, as discussed above, California courts have held that one can be a cohabitant even if one cohabits with several partners at once, *see Moore*, 52 Cal. Rptr. 2d at 264, or does not have a key to the residence or leave his belongings there, *see Holifield*, 252 Cal. Rptr. at 730-31. Certainly, these relationships embody a lesser level of

commitment, trust, and dependency than marriage, which, for example, creates community property rights, and subjects former spouses to dissolution procedures. *See, e.g.*, Cal. Fam. Code § 751 (creating community property rights in both spouses); *id.* § 2010 (creating ongoing jurisdiction for the court to render judgments concerning, *inter alia*, custody, support, and property division). Section 273.5 goes even further, to cover acts between *former* cohabitants. As all that is required to establish cohabitation is the existence of a substantial, amorous relationship and, perhaps, a sporadic shared living arrangement, it stands to reason that many individuals have many former cohabitants. Not all of these individuals are committed to, trust, or depend upon, each other. Thus, not all victims under the statute are particularly "vulnerable," nor are they "entitled to . . . care and protection" by the perpetrator. *Galeana-Mendoza*, 465 F.3d at 1061. Because some perpetrator-victim relationships covered by the statute are more akin to "strangers or acquaintances, which, depending on the wording of the statute, [does] not necessarily [trigger] a crime of moral turpitude[,]" *Grageda*, 12 F.3d at 922, we hold that this aggravating factor cannot, alone, transform § 273.5(a) into a crime categorically involving moral turpitude.[4]

Because the victims covered by § 273.5(a), as interpreted by the state courts, is overly-broad, we need not examine peti-

---

[4]We recently clarified that "*once the elements of the petitioner's offense are established*, our review of the BIA's determination that such offense constitutes a 'crime of moral turpitude' is governed by the same traditional principles of administrative deference we apply to the Board's interpretation of other ambiguous terms in the INA." *Marmolejo-Campos*, 2008 WL 530950, at *5 (emphasis added). Relying heavily on *Grageda*, *In re Tran* holds that "infliction of bodily harm upon a person with whom one has *such a familial relationship* is an act of depravity which is contrary to accepted moral standards." *In re Tran*, 21 I. & N. Dec. at 294 (emphasis added). Because *In re Tran* incorrectly identifies the elements of § 273.5(a) in at least one significant respect, we do not defer to the BIA's holding in *In re Tran*.

tioner's other contentions respecting the statute's "evil intent" requirement,[5] or extent-of-injury requirement.[6]

## II.   Modified Categorical Approach

[6] As we indicated at the outset of our discussion, even if a statutory offense fails to qualify as a CIMT under the categorical approach, in most cases, it is still possible that the crime of conviction at issue can qualify as a CIMT under the modified categorical approach. *See Quintero-Salazar*, 506 F.3d at 694 ("Under the modified categorical approach we examine documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for removal purposes." (citation and quotation marks omitted)). In this case, the BIA, relying on *Grageda*, concluded that § 273.5(a) was categorically a CIMT. It thus never made a determination under the modified categorical approach whether Morales' offense qualifies as a CIMT. Rather than make that determination in the first instance, we remand to the agency to address the modified categorical approach. *See INS v. Ventura*, 537 U.S. 12, 16 (2002).

## CONCLUSION

We hold that Morales' conviction under Cal. Penal Code § 273.5(a) for abuse of a cohabitant is not categorically a CIMT within the meaning of 8 U.S.C. § 1182(a)(2)(A)(i)(I) and § 1229b(b)(1)(C). We therefore grant Morales' petition

---

[5]*Grageda* interpreted the statute to require that the defendant "intended to cause the harm," 12 F.3d at 922, although later California cases appear to require only the general intent to commit the act that results in injury. *See People v. Campbell*, 90 Cal. Rptr 2d 315, 318 (Ct. App. 1999).

[6]Even in cases involving crimes committed against those in a special relationship with the perpetrator, we have required that the offending conduct result in injury to the victim. *Galeana-Mendoza*, 465 F.3d at 1061 (holding that California's domestic battery statute, Cal. Penal Code § 243(e), does not categorically qualify as a CIMT because it lacks an injury requirement).

for review,[7] reverse the decision of the BIA, and remand for further proceedings consistent with this opinion.[8]

## PETITION GRANTED and REMANDED.

---

[7]We therefore do not reach the issue, briefed and argued by the parties, of whether a waiver of inadmissibility under 8 U.S.C. § 1182(h) may render a petitioner convicted of a CIMT eligible for cancellation of removal under 8 U.S.C. § 1229b(b).

[8]We do not resolve the issue raised by the government that Morales' conviction under Cal. Penal Code § 273.5 would qualify as a crime of domestic violence under 8 U.S.C. § 1227(a)(2)(E) because that was not a basis of the BIA's decision. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (noting that a "court is powerless to affirm the administrative action by substituting what it considers to be a more adequate and proper basis" which was not relied on by the agency); *cf. Ventura*, 537 U.S. at 16 (noting that, "[g]enerally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands").