# Matter of Felix ROTIMI, Respondent

File A73 561 893 - New York

*Decided July 30, 2008*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien has not "lawfully resided" in the United States for purposes of qualifying for a waiver of inadmissibility under section 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h) (2006), during any periods in which the alien was an applicant for asylum or for adjustment of status and lacked any other basis on which to claim lawful residence.

FOR RESPONDENT: Daniel S. Shabasson, Esquire, New York, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Barbara Cigarroa, Assistant Chief Counsel

BEFORE: Board Panel: FILPPU, COLE, and PAULEY, Board Members.

FILPPU, Board Member:

This case was last before us on December 21, 2005, when we dismissed the respondent's appeal from the Immigration Judge's February 1, 2005, decision finding him statutorily ineligible for a waiver of inadmissibility under section 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h) (2000). Defining the term "lawfully resided continuously" as residence during which the alien has affirmatively been accorded the right or privilege of residing here and abides by the rules associated with that right or privilege, we concluded that the respondent failed to demonstrate that he acquired the requisite 7-year period of continuous lawful residence for purposes of establishing eligibility for a section 212(h) waiver.

Relying on that definition, we rejected the respondent's assertion that his consecutive periods of residence as a nonimmigrant, an asylum seeker, an adjustment applicant, and a lawful permanent resident should all be considered lawful in determining his eligibility for a waiver. Subsequently, the United States Court of Appeals for the Second Circuit remanded the case to "provide [the Board] with the opportunity to exercise its authority delegated

by Congress and provide a precedential interpretation of the relevant statutory provision pursuant to that authority." *Rotimi v. Gonzales*, 473 F.3d 55, 58 (2d Cir. 2007). The remand directs us to construe the phrase "lawfully resided continuously" in section 212(h) of the Act and, in particular, the term "lawful" as it is used in relation to asylum seekers and applicants for adjustment of status. The remand also instructs us to explain the source of the definition we adopt. *See also Onwuamaegbu v. Gonzales*, 470 F.3d 405 (1st Cir. 2006) (remanding for the Board to explain its application of section 212(h) in a case that seemingly raises questions as to the meaning of the phrase "lawfully resided continuously").

As explained below, we find the phrase "lawfully resided continuously" to be ambiguous. Further, we find it unnecessary to adopt a comprehensive definition of this statutory language in the context of this case. Instead, we simply determine that the respondent did not "lawfully" reside in the United States during those periods in which he was an applicant for asylum or for adjustment of status and lacked any other basis for claiming lawful residence.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts of this case are undisputed. The respondent was admitted to the United States on June 7, 1995, as a B-2 nonimmigrant visitor with permission to remain for 6 months. *See* section 101(a)(15)(B) of the Act, 8 U.S.C. § 1101(a)(15)(B) (1994) (requiring, in part, that the visitor have "a residence in a foreign country which he has no intention of abandoning"). In September 1995, prior to the expiration of his nonimmigrant status, the respondent filed an asylum application with the Department of Homeland Security ("DHS").[1] On May 17, 1996, the respondent's asylum application was denied and the DHS initiated deportation proceedings against the respondent.

During his deportation proceedings in July 1996, the respondent filed an application for adjustment of status based on his marriage to a United States citizen and a pending visa petition to classify him as an "immediate relative" under section 201(b) of the Act, 8 U.S.C. § 1151(b) (1994). The visa petition was approved on or about November 18, 1996, and on May 1, 1997, the Immigration Judge terminated the respondent's deportation proceedings to allow him to pursue his application for adjustment of status directly with the DHS. The respondent adjusted his status to that of a lawful permanent resident on August 13, 1997.

---

[1] The asylum application was actually filed with the former Immigration and Naturalization Service ("INS"). For ease of reference, we will refer to the former INS as the DHS.

On May 22, 2002, the respondent was convicted of the offense of attempted criminal possession of a forged instrument.  In November 2002, upon his return from foreign travel, he sought admission to this country as a returning permanent resident.  A Notice to Appear (Form I-862) filed with the Immigration Court on June 13, 2003, charged the respondent with inadmissibility under section 212(a)(2)(A)(i)(I) of the Act as an alien who has committed a crime involving moral turpitude.  During his hearing before the Immigration Judge, the respondent admitted the truth of the factual allegations and conceded that he is removable as charged.  He then applied for a waiver of inadmissibility under section 212(h) of the Act.  Concluding that the respondent had not acquired the requisite 7 years of continuous lawful residence, the Immigration Judge found him statutorily ineligible for a waiver.

## II.  SECTION 212(h)

Section 212(h) of the Act permits the Attorney General, in his discretion, to waive section 212(a)(2)(A)(i)(I), which provides that an alien convicted of a crime involving moral turpitude is inadmissible.  A lawful permanent resident may properly be charged with inadmissibility under section 212(a)(2)(A)(i)(I) of the Act but may, if statutorily eligible, seek a waiver of inadmissibility under section 212(h).  *See* section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13) (2006); *see also Matter of Collado*, 21 I&N Dec. 1061, 1064 (BIA 1998).  However, section 212(h) limits the eligibility of lawful permanent residents for a waiver, providing, in pertinent part, as follows:

> No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

We read the statute to permit a waiver for lawful permanent residents who: (1) have not been convicted of an aggravated felony since the date of admission as a permanent resident, *see Matter of Yeung*, 21 I&N Dec. 610 (BIA 1996, 1997); and (2) have lawfully resided continuously in this country for 7 years immediately preceding the institution of proceedings, irrespective of whether the period of lawful residence was as a permanent resident.[2]

---

[2]  In some unpublished decisions we have relied on the grammatical structure of section 212(h) to reject the DHS's contention that an alien can only "lawfully" reside in this country while in lawful permanent resident status.  The placement of the phrase "since the date of

(continued...)

### III.  ISSUE

To be eligible for a section 212(h) waiver the respondent must demonstrate that he has "lawfully resided continuously" in the United States for 7 years before the initiation of removal proceedings.  His removal proceedings began at least as of June 13, 2003, when the Notice to Appear was filed with the Immigration Court.  He must therefore establish that he lawfully resided here continuously since at least June 1996.  The respondent became a lawful permanent resident on August 13, 1997.  However, his failure to accrue 7 years of continuous residence *as a lawful permanent resident* is not decisive, but he does need an additional 14 months of lawful residence.  We must therefore determine whether his 13 months as an applicant for adjustment of status and his earlier (and overlapping) time as an applicant for asylum count toward establishing that he has "lawfully resided continuously" for 7 years before his removal proceedings were initiated.[3]

---

(...continued)

such admission" permits lawful residence to be accrued outside of permanent resident status. The phrase appears after the word "either" and before the word "or."  Standard English grammar requires that "either . . . or" constructions contain parallel elements following the coordinating conjunctions "either" and "or."  *See* Bryan A. Garner, *A Dictionary of Modern American Usage* 240, 479-80 (1998); *American Heritage Book of English Usage (*1996), *available at* http://www.bartleby.com/64/C002/004.html; *Fowler's Modern English Usage* 147 (2d ed. 1965).  In order for the phrase "since the date of such admission" to modify both clauses following the word "either," the phrase would need to appear *before* the word "either," e.g., "if since the date of such admission *either* the alien has been convicted of an aggravated felony *or* the alien has not lawfully resided continuously in the United States for a period of not less than 7 years."  In its current position *after* the word "either," the phrase "since the date of such admission" applies exclusively to the "convicted of an aggravated felony" clause.  Simply put, the rules of grammar provide that the second clause should not be read to require 7 years of continuous residence *as a lawful permanent resident.*

[3] For reasons based in meaningful part on "absurdity" concerns, we have construed an alien's adjustment to lawful permanent resident status as an "admission."  *See Matter of Shanu*, 23 I&N Dec. 754 (BIA 2005), *vacated*, *Aremu v. Dep't of Homeland Security*, 450 F.3d 578 (4th Cir. 2006); *Matter of Rosas*, 22 I&N Dec. 616 (BIA 1999).  Because the parties have not raised any challenge to this approach, we have no occasion to consider the impact on this case of such decisions as *Martinez v. Mukasey*, 519 F.3d 532 (5th Cir. 2008) (finding the statutory language to be unambiguous in ruling that an alien who adjusted to permanent resident status was not subject to the section 212(h) bar for conviction of an aggravated felony after "admission" as a lawful permanent resident).

## IV. ANALYSIS

We begin by examining the relevant language of section 212(h), which provides that "[n]o waiver shall be granted . . . [to] an alien lawfully admitted for permanent residence if . . . the alien has not *lawfully resided* continuously in the United States" for the required 7-year period. (Emphasis added.) Significantly, the precise phrase "lawfully resided" has not been employed elsewhere in the Act, and we are unaware of its use in a comparable context. Nor have we addressed the phrase in a precedent decision, although the Ninth Circuit has spoken to the question. *See Yepez-Razo v. Gonzales*, 445 F.3d 1216 (9th Cir. 2006) (discussing the term "lawfully resided" in the context of the Family Unity Program).

We find that the meaning of the phrase "lawfully resided" is not self-evident, and we consider it to be ambiguous. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984). The ambiguity is reflected in the range of possible constructions it may be given. For example, it could, as the respondent suggests, be interpreted to include periods of residence during which an alien, despite having no lawful immigration status, is not subject to removal as a matter of law and may obtain employment authorization. It could also be construed, as we determined when the case was last before us, as residence during which the alien has affirmatively been accorded the right or privilege of residing here and abides by the rules associated with that right or privilege. It could even be read to require an entirely law-abiding life, beyond the context of the immigration laws, during the 7-year period. However, Congress has used the phrase "lawfully resided" in a technical immigration provision designed to waive criminal grounds of inadmissibility set forth in the Immigration and Nationality Act. As such, we believe that the meaning of the phrase needs to be derived in the context of the immigration laws.

Under the current structure of our nation's immigration laws and the implementing regulations, there is a wide array of classifications into which aliens might fall. Given the breadth of possible issues that might arise in any particular alien's situation, we find that it would be imprudent for us to attempt a comprehensive ruling that would address and resolve the many cases that are not now before us. Because such an expansive interpretation of the statutory phrase is not necessary for the resolution of this case, we will simply explain the reasons that lead us to conclude that the respondent's 13 months as an applicant for adjustment of status and his earlier (and overlapping) time as an applicant for asylum do not count toward establishing that he has "lawfully resided continuously" for the 7-year period required to establish his eligibility for a section 212(h) waiver of inadmissibility.

At the outset, we find that the phrase "lawfully resided" connotes more than simple presence or residence. The overall statutory scheme for conferring privileges on aliens reflects that lawful residence in this country is not something that an alien can achieve through self-action alone. For example, the status accorded to a nonimmigrant or lawful permanent resident is conferred and sanctioned only after application and examination. The same is true for asylee and refugee benefits. Further, as explained below, the basic principles of immigration law lead us to construe the term "lawfully resided" in a manner that is in accord with our previous interpretation of the word "lawful" in the phrase "lawful unrelinquished domicile" in former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994).

But first we turn to the legislative history pertaining to the phrase "lawfully resided," which was added to section 212(h) of the Act by section 348 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-639 ("IIRIRA"). That history, while not extensive, lends some support to the proposition that an alien's application for lawful status or other benefit that might not entail a "status" must actually be approved before his or her residence in this country will be considered lawful for section 212(h) purposes.

According to a conference report accompanying the IIRIRA, "The managers intend that the provisions governing continuous residence set forth in INA section 240A as enacted by this legislation shall be applied as well for purposes of waivers under INA section 212(h)." H.R. Rep. 104-828, at 228 (1996) (Conf. Rep.), 1996 WL 563320. Section 240A(a)(2) of the Act, 8 U.S.C. § 1229b(a)(2) (2006), provides relief from removal to certain lawful permanent residents with criminal convictions if they have "resided in the United States continuously for 7 years after having been *admitted in any status*." (Emphasis added.) We consider the conference report's reference to section 240A to relate to an alien's residence after admission in an immigration status has been authorized.[4] The requirement that an alien "lawfully reside" as a prerequisite for relief under section 212(h) strongly suggests the need for favorable action on a request to be in this country. However, unlike section 240A, section 212(h) does not specifically require the residence to be in a "status."

---

[4] We have further considered the possibility that the conference report could be construed to refer to the conviction stop-time rule in section 240A(d)(1) of the Act, but for the reasons above we do not believe that Congress intended the requirement for "lawful" residence to refer simply to a law-abiding life. Instead, we find it unlikely that Congress, through the conference report's cryptic reference to section 240A, meant to incorporate all the provisions relating to continuous residence contained in that section of the Act.

We reject the respondent's suggestion that the legislative history indicates that the "residence" required under sections 212(h) and 240A(a) of the Act be treated the same. Section 240A(a) requires only 7 years of continuous residence after admission to the United States in any status, thereby including aliens who have fallen out of status during the prescribed period. *See Matter of Blancas*, 23 I&N Dec. 458 (2002). Section 212(h) could easily have been written to require simple residence, lawful or not, following admission in some status. But its language does not parallel section 240A(a) in this respect. We are therefore unpersuaded that the conference report's reference to section 240A overrides the differently worded language of section 212(h), which requires 7 years of continuous *lawful* residence. *Cf. Matter of Blancas*, *supra*, at 461 (declining to read section 240A(a)(2) to include maintenance of status as a prerequisite for relief and finding that the legislative history's reference to section 212(c) does not clearly override the plain language of section 240A(a)(2), which allows 7 years of continuous residence after admission in any status for purposes of cancellation of removal).

We also reject the respondent's contention that any period of physical presence in which an alien is not subject to being removed as a matter of law should be deemed "lawful," even if the alien has no specific permission to be here beyond that which is afforded during the adjudication of a claim or a removal case. As we understand it, the respondent's argument would allow lawful residence to arise from any legal impediment to removal. However, simply acceding to the physical presence of an alien under such circumstances does not render his or her residence "lawful" for section 212(h) purposes. If that were the case, the vast majority of aliens in the United States who are entitled to a removal hearing and the associated appeal rights could claim lawful residence based on a combination of physical presence and some barrier to removal. We are unpersuaded that the notion that an alien "lawfully" resides in the United States within the meaning of the immigration laws should hinge on the Government's indulgence of his or her presence until the completion of proceedings. Being an *applicant* for asylum or for adjustment of status is not a defense to removal. It is only after the application is approved that the alien has authorization to remain in this country beyond the conclusion of the proceedings.

Moreover, an examination of section 212(h) as it applies to lawful permanent residents within the statutory scheme supports requiring an approved application, not merely an application pending review, for lawful status or other benefit in order for residence in this country to be deemed lawful. Section 101(a)(20) of the Act states that "[t]he term 'lawfully admitted for permanent residence' means the status of having been *lawfully* accorded the privilege of *residing* permanently in the United States as an immigrant *in accordance with the immigration laws*, such status not having changed."

(Emphasis added.) Thus, when it comes to lawful permanent residents, despite an alien's ultimate eligibility for such status, the language of the statute indicates that actual approval, not simply the submission, of the application is required before the alien can claim to have been accorded the privilege of residing permanently in this country.

Although the word "lawful" is not defined in section 101 of the Act, it is generally defined as "being in harmony with the law" or "constituted, authorized, or established by the law." *Merriam-Webster's Collegiate Dictionary* 658 (10th ed. 2002). Section 101(a)(33) of the Act defines "residence" as "the place of general abode," which is further defined as a person's "principal, actual dwelling place in fact, without regard to intent." For an alien's residence to be treated as "lawful," it must be authorized or in harmony with the law, which requires some formal action beyond a mere request for authorization or the existence of some impediment to actual physical removal.

The respondent further contends that "lawfully resid[ing]" should be considered the equivalent of being "not unlawfully present" for purposes of inadmissibility under section 212(a)(9) of the Act. Section 212(a)(9)(B)(ii) provides that "an alien is deemed to be unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled." Under section 212(a)(9)(B)(iii)(II), a bona fide asylum applicant is exempt from the consequences of accruing "unlawful presence." But simply tolling or exempting an alien from added sanctions for staying in this country without lawful authority does not transform the alien's presence while an applicant for benefits into lawful residence itself. Congress carved out a special exception for the limited purpose of section 212(a)(9) inadmissibility, without which an alien's presence as an *applicant* for asylum would be deemed unlawful after the expiration of any *authorized* period of presence. Section 212(h) does not contain any similar exception for asylum applicants, and the special exception confined to section 212(a)(9) does not warrant a broader application to change the meaning of "lawful" residence for section 212(h) waiver eligibility.

The lawfulness of an alien's residence stems from the grant of a specific privilege to stay in this country, not the mere fact that he or she is an applicant for such a privilege. *Cf. United States v. Ochoa-Colchado*, 521 F.3d 1292 (10th Cir. 2008) (recognizing a distinction between an *applicant* for adjustment and the *grant* of adjustment, in that the unlawful status of the former is not relinquished until the latter occurs, and holding that the alien was still unlawfully in the United States, despite his pending application for adjustment of status, which operated to stay his removal during its adjudication, and his receipt of an employment authorization document). This

conclusion is consistent with our decision in *Matter of Lok*, 18 I&N Dec. 101 (BIA 1981), in which we construed the meaning of the term "lawful" in the context of former section 212(c) of the Act, which required "lawful domicile." In *Matter of Lok*, *supra*, we concluded that for a domicile to be considered "lawful," the alien's presence in this country

> must be lawful within the meaning of this country's immigration laws. The Immigration and Nationality Act sanctions the continuing presence in this country of but one class of aliens other than those lawfully admitted for permanent residence, namely, nonimmigrants in compliance with the terms and conditions of their admission.
>
> An alien in breach of his nonimmigrant status . . . has no claim of right under the Act to remain in this country. The fact that the Government refrains, in an individual case or as a matter of general policy, from instituting deportation proceedings against an alien or enforcing his deportation does not legalize the status of the beneficiary of the Government's forebearance. He remains in the United States at the sufferance of the Government, not under any lawful status accorded him by the Act.

*Matter of Lok*, *supra*, at 108-09 (citations omitted).

Our view of lawfulness in the context of lawful domicile was endorsed by the Second Circuit in *Lok v. INS*, 681 F.2d 107 (2d Cir. 1982), where the court stated the following:

> Lok established lawful domicile only when his intent to remain was legal under the immigration laws. . . . As a seaman who had overstayed his 29 days, Lok was in the United States illegally. He could not establish lawful domicile. Nor did his marriage change his status. The INS halted deportation proceedings against Lok as a matter of grace, not as a matter of law. The toleration of Lok's presence clearly did not legalize his intent to remain, which was still at odds with the statute, as Lok had to leave the country before he could enter as a legal alien.
>
> The requirement that Lok's domicile be "lawful" is more than a formality; it is a commandment installed in the 1952 Immigration and Naturalization Act . . . .
>
>      . . . .
>
>      . . . The possibility of [ ] discretionary relief led the INS and the Courts to tolerate Lok's presence; it did not legalize his intent to remain any more than the Service's policy against deporting Lok as the spouse of a citizen.

*Lok v. INS*, *supra*, at 109-11 (citations omitted).

Section 212(h) contains no domicile requirement, and the immigration laws have evolved to recognize that nonimmigrants and lawful permanent residents are not the only categories of aliens that are lawfully in the United States. For example, aliens accorded refugee or asylee status are now considered to have lawful presence. However, based on the long-standing construction of the term "lawful" in the *Lok* decisions, we think that there is a distinction to be drawn between permitting an alien's presence in this country for a limited purpose and legalizing his or her stay. It is this distinction that provides the primary basis for our refusal to count the respondent's time spent as an

applicant for benefits as periods during which he "lawfully resided" here for purposes of a section 212(h) waiver.

The Second Circuit has asked us to explain the source of the interpretation we adopt. We rely on the same fundamental construction of the term "lawful" that we applied in the past but update it in light of general changes that have taken place over the years. As explained earlier, we also find support for our view in the legislative history, which we read to suggest the need for a grant of a status of some sort, and probably one that is consistent with lawfully establishing a residence in the United States. Moreover, we rely on the dictionary definition of the term "lawful" and the language of section 101(a)(20) of the Act, which mandates that the residence of lawful permanent residents be "in accordance with the immigration laws." To reside here lawfully entails more than being an applicant for a benefit, even if the opportunity for work authorization may arise from pursuit of the benefit. The temporary reprieve from removal and possibility of work authorization that can accompany applications for asylum and adjustment of status are simply that—temporary reprieves and possibilities.[5]

The respondent urges us to follow the Ninth Circuit's decision in *Yepez-Razo v. Gonzales*, *supra*, where the court concluded that an eligible beneficiary for Family Unity benefits was "lawfully" residing because the statute creating the Family Unity Program provided that eligible beneficiaries "'may not be deported'" and "'shall be granted authorization to engage in employment.'"[6] *Id.* at 1219 (quoting section 301(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5029). Ordinarily, we would expect the privilege of residing in this country to be reflected in a recognized status such as that of nonimmigrant, refugee, or asylee, each of which is set out in the statute. The unique nature of the Family Unity Program may qualify as

---

[5] On appeal, the respondent asserts that the "rule of lenity" requires us to interpret the term "lawfully resided" in such a way as to favor an alien in his position. We disagree. As discussed above, we find that the meaning of the phrase at issue can be discerned, at least sufficiently enough to resolve this case, by looking to normal precepts of immigration law. *See generally Ruiz-Almanzar v. Ridge*, 485 F.3d 193, 198-99 (2d Cir. 2007) (explaining that the rule of lenity is one of last resort, and that it does not apply whenever there is an ambiguity in an immigration statute).

[6] The court observed that the term "lawfully resided" is "unclear" and that the Board had declined to define it. The court likewise abstained from providing a definition, finding that "[w]hatever the proper definition," the alien in that case was "lawfully residing in the United States for purposes of 212(h)." *Yepez-Razo v. Gonzales*, *supra*, at 1219. Subsequently, and in the absence of a Board precedent on the issue, the Ninth Circuit treated enrollment in the Family Unity Program as reflecting that the alien had been "admitted in any status" so as to qualify for cancellation of removal. *See Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1018-20 (9th Cir. 2006).

well, given its statutory foundation in section 301 of the Immigration Act of 1990, and its expectation of long-term presence and ultimate regularization of status. Notably, benefits under the Family Unity Program require the filing of an application and a favorable decision on that application. *See* 8 C.F.R. § 236.14 (2008). The issue of lawful residence under the Family Unity Program, however, is not currently before us, and we reject the respondent's reliance on *Yepez-Razo v. Gonzales*, *supra*, at least to the extent it finds that "lawful" residence arises simply from the inability to deport an alien coupled with the alien's eligibility for work authorization.[7]

Importantly, we need now only resolve whether an applicant for privileges or benefits is deemed to have "lawfully resided" here for purposes of section 212(h) prior to a favorable action on the application, when the applicant enjoys no other status or privilege that prevents the initiation and completion of removal proceedings. As indicated above, we resolve this question against the respondent.

The respondent was admitted to the United States in June 1995 as a nonimmigrant visitor for a period of 6 months. However, he did not abide by the rules associated with that privilege, as he remained beyond his authorized 6-month period of stay. Consequently, any lawfulness associated with his presence or residence ended when his nonimmigrant visa expired. The respondent's submission of asylum and adjustment applications did not change the fact that his status as a nonimmigrant visitor had ended. Nor did filing such applications give the respondent lawful residence here, as he was merely an applicant for benefits with, at best, a temporary reprieve while his applications were adjudicated. Specifically, the respondent was requesting

---

[7] To illustrate, under the regulations, an alien appealing to the Board from an initial order of removal may not be removed while the appeal is pending. 8 C.F.R. § 1003.6(a) (2008). In our judgment, it would be inconsistent with the overall scheme of section 212(h) to consider such an alien to be lawfully residing here simply by virtue of the stay that accompanies the appeal. Further, it is possible for work authorization to be granted in limited circumstances to aliens in removal proceedings, such as asylum applicants whose cases are not resolved in a reasonably prompt fashion, or certain aliens whose final removal orders cannot be implemented. *See, e.g.*, section 208(d)(2) of the Act, 8 U.S.C. § 1158(d)(2) (2006) (placing a general 180-day waiting period on employment authorization for asylum applicants); section 241(a)(7) of the Act, 8 U.S.C. § 1231(a)(7) (2006) (limiting employment authorization for aliens ordered removed); *see also* 8 C.F.R. § 1208.7(a)(1) (2008) (indicating that the statutory work authorization waiting period for asylum applicants includes those in removal proceedings before Immigration Judges); 8 C.F.R. §§ 274a.12(c)(18), 274a.14(a) (2008).

forms of relief that would allow him to remain in this country. Indeed, the respondent was put into deportation proceedings during this very period of time.[8]

We likewise reject the respondent's assertion that his ability to obtain work authorization during the pendency of his asylum and adjustment applications demonstrates lawful residence. An alien who is merely provided employment authorization, and who is allowed to remain here while awaiting a ruling on his applications for relief, is not in the same position as an alien who has been granted a valid immigration status or some other specific authorization to be here, such as Family Unity benefits (regardless of whether it amounts to a recognized "status"). *See Matter of Lok*, *supra*; *see also United States v. Ochoa-Colchado*, *supra*. Thus, work authorization is not equivalent to a lawful status; nor is it necessarily reflective of a right to lawfully be or remain in this country. Rather, it can equally be an indication of other things, such as an alien's need for employment while applications for relief are pending. The respondent was in an unlawful immigration status between the time his visitor status had expired and the time he adjusted his status. He did not "lawfully reside" here for section 212(h) purposes pending the DHS's ruling on his applications for relief.

## V. CONCLUSION

Based on the above, we find that the respondent has not lawfully resided continuously in this country for a period of not less than 7 years immediately preceding the initiation of proceedings in June 2003. Therefore, we find that the Immigration Judge correctly concluded that the respondent is statutorily ineligible for a section 212(h) waiver. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

[8] The timing of the respondent's applications in relation to the initial deportation proceedings parallels the facts in *Matter of L-K-*, 23 I&N Dec. 677 (BIA 2004), in which we determined that the alien had failed to maintain lawful status and that the failure was not "for technical reasons" within the contemplation of section 245(c)(2) of the Act, 8 U.S.C. § 1255(c)(2) (2000).