**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ADRIAN VARGAS CERVANTES, *Petitioner*, <br><br> v. <br><br> ERIC H. HOLDER, JR., Attorney General, *Respondent*. | No. 10-73384 <br><br> Agency No. A078-464-072 <br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 13, 2014—San Francisco, California

Filed November 19, 2014

Before: Mary M. Schroeder, Susan P. Graber, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

# SUMMARY[*]

## Immigration

The panel granted Adrian Vargas Cervantes's petition for review from the Board of Immigration Appeals' decision finding him inadmissible based on his convictions for two crimes involving moral turpitude, and ineligible for an extreme hardship waiver or petty offense exception.

The panel held that the BIA correctly concluded that Vargas's California Penal Code § 422 conviction for threatening to commit a crime resulting in death or great bodily injury constituted a CIMT. The panel also concluded that the BIA's holding in *In re Rotimi,* 24 I. & N. Dec. 567 (BIA 2008), that the time an alien spends in the United States awaiting approval of an adjustment application does not count toward INA § 212(h)'s lawful residency requirement, is entitled to *Chevron* deference. The panel accordingly held that the BIA correctly found Vargas ineligible for a § 212(h) extreme hardship waiver.

The panel held, however, that the BIA erred by looking to evidence outside the record of conviction to conclude that Vargas was convicted of spousal abuse under CPC § 273.5(a). The panel also held that the BIA erred in concluding that Vargas did not qualify for the petty offense exception, and thus remanded for the BIA to consider whether Vargas is eligible for the exception.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Judy Lorenzo (argued), Law Offices of Judy Lorenzo, San Jose, California, for Petitioner.

Tony West, Assistant Attorney General, Civil Division; Aimee J. Carmichael (argued), Gregory M. Kelch, Attorneys, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for Respondent.

**OPINION**

BYBEE, Circuit Judge:

Adrian Vargas Cervantes ("Vargas") petitions for review of a final order of removal. The Board of Immigration Appeals ("BIA") found Vargas inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I), and ineligible for an exception under § 1182(a)(2)(A)(ii), because it found that Vargas was convicted of two crimes involving moral turpitude ("CIMTs")—spousal abuse under California Penal Code § 273.5(a) and threatening to commit a crime resulting in death or great bodily injury under California Penal Code § 422. The BIA also determined that Vargas was ineligible for an extreme hardship waiver, applying its decision in *In re Rotimi*, 24 I. & N. Dec. 567 (BIA 2008). We hold that although the BIA correctly concluded that Vargas's conviction under § 422 is a CIMT, the BIA erred in concluding that Vargas was convicted of spousal abuse under § 273.5(a) by looking to evidence outside the record of conviction. We also conclude that the BIA's decision in *Rotimi* is entitled to deference, and therefore hold that the BIA correctly found Vargas ineligible for an extreme

hardship waiver. We grant the petition and remand for further proceedings.

## I. PROCEEDINGS

Vargas is a native and citizen of Mexico who became a lawful permanent resident on February 21, 2002. In 2006, Vargas pleaded nolo contendere and was convicted of violating California Penal Code §§ 273.5(a) (inflicting corporal injury on a person in certain specified relationships) and 422 (threatening to commit a crime resulting in death or great bodily injury). He served sixty days' imprisonment.

In 2008, the Department of Homeland Security served Vargas with a Notice to Appear, charging that he was inadmissible[1] under 8 U.S.C. § 1182(a)(2)(A)(i)(I)[2] because both convictions were for CIMTs. Vargas denied the factual

---

[1] Vargas sought reentry after spending two weeks with his mother in Mexico.

[2] Title 8 U.S.C. § 1182(a)(2)(A)(i) reads in relevant part:

> Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are . . . ineligible to be admitted to the United States:
>
> (i) In general
>
> Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of –
>
> (I) a crime involving moral turpitude . . . .

.

allegations relating to the criminal convictions and argued that he qualified for either the petty offense exception set forth in Immigration and Nationality Act ("INA") § 212(a)(2)(A)(ii), or a waiver under INA § 212(h). Vargas later admitted that he "ha[d] to concede regarding the 212(h) issue."

In an oral decision, the Immigration Judge ("IJ") held that Vargas was inadmissible because both of his convictions were for CIMTs. Because Vargas "freely admit[ted] that the victim of these crimes was in fact his spouse," the IJ decided that the conviction under § 273.5(a) was for a CIMT. The IJ then decided that a violation of § 422 is a CIMT because the threat of death or great bodily injury causes a victim sustained fear. Finally, the IJ held that Vargas was not eligible for a waiver under § 212(h) because he had not "lawfully resided continuously" in the United States for seven years before the government initiated removal proceedings. *See Rotimi*, 24 I. & N. Dec. 567.

The BIA affirmed the IJ's decision and dismissed Vargas's appeal. It recognized that although a violation of § 273.5(a) is not categorically a CIMT, a § 273.5(a) conviction is a CIMT if the victim was the perpetrator's spouse. Because Vargas "admitted that the victim was his wife," the BIA concluded that Vargas's § 273.5(a) conviction was for a CIMT. The BIA also agreed with the IJ that § 422 is a CIMT because it previously had found that "threatening behavior can be an element of a crime involving moral turpitude." *In re Ajami*, 22 I. & N. Dec. 949, 952 (BIA 1999). Because Vargas was convicted of more than one CIMT, the BIA concluded that he did not qualify for the petty offense exception described in 8 U.S.C. § 1182(a)(2)(A)(ii). Finally, although the BIA held that Vargas waived his

§ 212(h) argument before the IJ, the BIA decided that, in any event, Vargas was not eligible for § 212(h) relief because he had not resided lawfully in the United States for seven years prior to his removal proceedings.

Vargas timely petitioned for this court's review.

## II.  STANDARD OF REVIEW

Although 8 U.S.C. § 1252(a)(2)(C) generally precludes judicial review of orders against aliens removable on criminal grounds, we have jurisdiction to review questions of law arising from removal orders. *Id.* § 1252(a)(2)(D).  "Whether a crime involves moral turpitude is such a question of law." *Mendoza v. Holder*, 623 F.3d 1299, 1302 (9th Cir. 2010).  We therefore have jurisdiction to review Vargas's petition, and we conduct our review de novo. *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1163 (9th Cir. 2006).

## III.  INADMISSIBILITY

Vargas was charged under 8 U.S.C. § 1182(a)(2)(A)(i)(I), which makes inadmissible "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude."  That inadmissibility provision is subject, however, to a petty offense exception.  Under the exception, § 1182(a)(2)(A)(i)(I) "shall not apply" if (1) the alien "committed only one crime," (2) "the maximum penalty possible for the [predicate CIMT] . . . did not exceed imprisonment for one year," and (3) "if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months." *Id.* § 1182(a)(2)(A)(ii)(II).

Vargas argues that the BIA erred in deciding that his convictions under California Penal Code §§ 273.5(a) and 422 were for CIMTs and that, even if his § 422 conviction was for a CIMT, he qualifies for the petty offense exception.

A. *California Penal Code § 273.5(a)*

Vargas first argues that the BIA erred in determining that his conviction under California Penal Code § 273.5(a) was for a CIMT.  Section 273.5(a) provides that "[a]ny person who willfully inflicts corporal injury resulting in a traumatic condition upon a victim described in subdivision (b) is guilty of a felony."[3]  In turn, subdivision (b) describes a victim as (1) "[t]he offender's spouse or former spouse," (2) "[t]he offender's cohabitant or former cohabitant," (3) "someone with whom the offender has, or previously had, an engagement or dating relationship," or (4) "[t]he mother or father of the offender's child."

Our precedents make clear that although § 273.5(a) is not categorically a CIMT, it is a divisible statute for which a conviction under one portion of the statute (corporal injury against a spouse) will qualify as a CIMT, while conviction under other subsections (for example, corporal injury against a cohabitant) will not.  *Compare Grageda v. INS*, 12 F.3d 919, 922 (9th Cir. 1993) (holding that "*spousal* abuse under section 273.5(a) is a crime of moral turpitude" (emphasis added)), *with Morales-Garcia v. Holder*, 567 F.3d 1058 (9th Cir. 2009) (holding that corporal injury against a *cohabitant*

---

[3]  A traumatic condition is "a wound, or external or internal injury, . . . whether of a minor or serious nature, caused by a physical force."  Cal. Penal Code § 273.5(d).

under § 273.5(a) is not a crime involving moral turpitude).[4] It is thus necessary to apply the modified categorical approach. Under that approach, we consider whether the "judicially noticeable facts in the record indicate that [the alien] was convicted of the elements of the generically defined crime." *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 887 (9th Cir. 2003).

In applying the modified categorical approach here, the BIA agreed with the IJ that Vargas's § 273.5(a) conviction was for a CIMT because Vargas admitted before the IJ that the victim of that crime was his wife. In so doing, the BIA relied upon the Attorney General's decision in *In re Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2005), which ruled that an IJ may consult evidence outside the record of conviction in determining whether an alien has been "convicted of" a CIMT. *See id.* at 690.

Although Vargas's in-court admission may have been appropriate for consideration under the framework outlined in *Silva-Trevino*, we have recently rejected *Silva-Trevino*. *See Olivas-Motta v. Holder*, 746 F.3d 907, 911–12 (9th Cir. 2014) (holding that *Silva-Trevino* was not entitled to deference because "[t]here is nothing in the substantive definition of a CIMT" that allows courts to "look to conduct that an alien 'committed' to determine the acts he has been

---

[4] Vargas contends that we abandoned *Grageda* in *Fernandez-Ruiz*, 468 F.3d 1159, and *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054 (9th Cir. 2006). We disagree. In both cases, we concluded that the statutes under review lacked elements that were crucial to our decision in *Grageda*—willfulness and an injury that causes a traumatic condition. *See Fernandez-Ruiz*, 468 F.3d at 1165; *Galeana-Mendoza*, 465 F.3d at 1060. Neither case calls into question *Grageda*'s holding that a conviction under § 273.5(a) for spousal abuse is a CIMT.

'convicted of'"). Thus, in this circuit, "an IJ is limited to the record of conviction in determining whether an alien has been 'convicted of' a CIMT." *Id.* at 916.

Here, the BIA permissibly employed the modified categorical approach to the extent it considered the "conviction document" in an effort to identify Vargas's victim. But its inquiry should have ended with the conviction document, which did not specify Vargas's relationship with the victim. Although judicial admissions ordinarily bind a party, an alien's description of his crimes is not an acceptable source of evidence under the modified categorical approach. *See Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1129 n.7 (9th Cir. 2007) ("[U]nder the modified categorical approach we may not consider . . . testimony" about the alien's criminal conduct.), *abrogated on other grounds by Young v. Holder*, 697 F.3d 976, 979 (9th Cir. 2012) (en banc). We therefore hold that the BIA erred in concluding that Vargas was convicted of spousal abuse under § 273.5(a).[5]

B. *California Penal Code § 422*

Vargas also argues that the BIA erred in determining that his conviction under § 422 was for a CIMT. He is mistaken. "[Section] 422 is categorically a crime involving moral turpitude." *Latter-Singh v. Holder*, 668 F.3d 1156, 1163 (9th Cir. 2012). The BIA thus correctly determined that Vargas is

---

[5] Because the BIA did not address whether Vargas "admit[ted] having committed" or "admit[ted] committing acts which constitute the essential elements of" spousal abuse under § 273.5(a) for purposes of 8 U.S.C. § 1182(a)(2)(A)(i)(I), we do not address those questions in the first instance.

inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) based on his § 422 conviction.

## C.  *Petty Offense Exception*

Vargas argues that, in any event, he is not inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he qualifies for the petty offense exception, 8 U.S.C. § 1182(a)(2)(A)(ii). *See In re Salvail*, 17 I. & N. Dec. 19, 21 (BIA 1979) (explaining that the relief afforded by the petty offense exception is mandatory).  The BIA held that Vargas did not qualify for the petty offense exception because it concluded that Vargas was convicted of two CIMTs.  In light of our holding that Vargas was not convicted of spousal abuse under § 273.5(a), however, the BIA's conclusion was based on an erroneous ground.  We therefore remand for the BIA to consider whether Vargas is eligible for the petty offense exception on any other grounds.[6]

## IV.  EXTREME HARDSHIP WAIVER

Finally, Vargas contends that even if he is inadmissible for having committed a CIMT, the IJ and the BIA erred in ordering him removed because he is eligible for an extreme hardship waiver under INA § 212(h) (codified at 8 U.S.C. § 1182(h)).  Specifically, Vargas contends that the IJ and the BIA erroneously relied on the BIA's decision in *Rotimi*, 24 I. & N. Dec. 567, in holding that he did not meet § 212(h)'s

---

[6]  The Government asks us to decide on alternative grounds, not yet considered by the BIA, that Vargas does not qualify for the petty offense exception.  Because such questions fall within the BIA's domain, we decline to do so.  *See INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam).

lawful residency requirement. He then invites us to reject *Rotimi* and to find that he lawfully resided in the United States while he was waiting for the INS to process his application for adjustment of status. Before we consider Vargas's suggestion to reject *Rotimi*, we must first decide whether this issue is properly presented for our review.

A. *Waiver of Argument*

During a hearing before the IJ, counsel for Vargas stated, "[w]e have to concede regarding the issue of 212(h)." The IJ then asked, "[s]o you're conceding that he's not eligible," and counsel reiterated, "[t]hat is correct, Your Honor. They have provided a case right on point."[7] Despite his concession, Vargas later argued in his appeal to the BIA that "[t]he [IJ] erred in denying [his] application for 212(h) waiver based on [the IJ's] reliability [sic] on *Matter of Rotimi*." The BIA held that Vargas had conceded the argument and could not "challenge the factual findings or legal conclusions of the Immigration Judge that arose from [his] admission." Nevertheless, the BIA considered the merits of Vargas's argument and concluded that Vargas did not adequately explain why *Rotimi* does not apply to his case.

An applicant's failure to properly raise an issue to the BIA generally constitutes a failure to exhaust, thus depriving us of jurisdiction to consider the issue. *Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004). That said, we "may review any issue addressed on the merits by the BIA, regardless whether it was raised to the BIA by the petitioner." *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 852 (9th Cir. 2013), *cert. denied*, --- S. Ct. ----, 2014 WL 1751502 (Oct.

---

[7] The "case right on point" was *Rotimi*.

14, 2014) (No. 13-9961); *see also Sagermark v. INS*, 767 F.2d 645, 648 (9th Cir. 1985) (holding that an issue that was not technically before the BIA on the merits may be considered exhausted if the BIA considered the merits of the IJ's decision). Because the BIA addressed Vargas's claim—despite his concession—we are satisfied that we have jurisdiction to consider Vargas's argument regarding *Rotimi*.

## B. *Eligibility for Extreme Hardship Waiver*

An alien may receive a waiver under INA § 212(h) if, among other reasons, removal would result in extreme hardship to family members who are United States citizens or lawful residents. 8 U.S.C. § 1182(h)(1)(B). "No waiver shall be granted," however, if the alien "has not *lawfully resided continuously* in the United States for a period of not less than 7 years immediately preceding the date of initiation of [removal] proceedings." *Id.* § 1182(h) (emphasis added). In *Yepez-Razo v. Gonzales*, we observed that the phrase "lawfully resided continuously" was unclear. 445 F.3d 1216, 1218 (9th Cir. 2006). There, we chose not to define "lawfully resided continuously" in the first instance because we are prohibited from "'intrud[ing] upon the domain which Congress has exclusively entrusted to an administrative agency.'" *Id*. at 1219 n.6 (alteration in original) (quoting *Orlando Ventura*, 537 U.S. at 16).

A few months later, the BIA agreed that "lawfully resided continuously" is an ambiguous phrase, and it addressed this issue in a precedential opinion, *Rotimi*, 24 I. & N. Dec. at 571. There, Rotimi entered the United States in 1995 as a nonimmigrant visitor with permission to remain for six months. *Id.* at 568. Within the six-month time period, he filed an application for asylum, which was denied. *Id.* He

then married a United States citizen, received an immediate-relative visa, and ultimately became a lawful permanent resident in 1997. *Id.* In 2003, DHS served Rotimi with a notice to appear based on his commission of a CIMT. *Id.* at 569. He claimed that he qualified for a waiver under § 212(h) because he had lawfully resided in the United States for more than seven years. Although he had been a lawful permanent resident for only five years, he claimed that he began "lawfully residing" in the United States when he entered the country lawfully. The BIA rejected Rotimi's argument, holding that "'lawfully resided' connotes more than simple presence or residence." *Id.* at 572. It then explained that residence is not "lawful" unless "authorized or in harmony with the law." *Id.* at 574. Because lawful residence is a privilege "that an alien can[not] achieve through self-action alone," the BIA explained that "lawfully" entering the country is not enough. *Id.* at 572. Furthermore, it held that being an applicant for an adjustment of status, by itself, does not qualify as continuous lawful residence for purposes of § 212(h). *Id.* at 577–78. Accordingly, the BIA concluded that Rotimi did not qualify for a waiver under § 212(h) even though he physically resided in the United States, because he did not *lawfully* reside in the United States until he became a lawful permanent resident. *Id.*

Here, we must consider whether Vargas "lawfully resided" in the United States between June 12, 2001, when his wife filed an application on his behalf for an adjustment of status, and July 10, 2008, when DHS issued the Notice to Appear. In considering this question, we are guided by the two-step analysis set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron*, we first ask "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If the

statute is silent or ambiguous, we then consider "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. The agency's interpretation need not be the best construction of the ambiguous statute. *Id.* at 843 n.11.

The first step of the *Chevron* analysis is straightforward here because we previously observed that "lawfully resided continuously" is an unclear phrase. *Yepez-Razo*, 445 F.3d at 1218; *see also Rotimi*, 24 I. & N. Dec. at 571. Therefore, under the second step of the *Chevron* analysis, the BIA's decision is entitled to deference so long as it is reasonable. *Chevron*, 467 U.S. at 843–44; *see also Delgado v. Holder*, 648 F.3d 1095, 1102 (9th Cir. 2011) (en banc) ("The BIA's precedential decisions interpreting the Immigration and Nationality Act are entitled to *Chevron* deference."). The BIA concluded that "actual approval, not simply the submission, of the application [for lawful permanent resident status] is required before the alien can claim to have been accorded the privilege of residing permanently in this country." *Rotimi*, 24 I. & N. Dec. at 574. That conclusion is reasonable. The BIA's decision finds support in the text of the statute, in the statute's legislative history, in a comparison of the statute with other sections of the INA that use similar language, and in case law distinguishing between an alien who has *applied* for a particular status and one who has been *granted* such status. *See id*. at 573–77. Accordingly, we defer to the BIA's decision, and in doing so, we join the Second and Eleventh Circuits. *See Rotimi v. Holder*, 577 F.3d 133, 139 (2d Cir. 2009) (per curiam); *Quinchia v. U.S. Attorney Gen.*, 552 F.3d 1255, 1259 (11th Cir. 2008).

Vargas's situation is indistinguishable from *Rotimi*. Although he applied for lawful permanent resident status in 2001, he did not begin *lawfully* residing in the United States

until February 21, 2002—the day he became a lawful permanent resident.  As in *Rotimi*, the time Vargas resided in the United States while his application for lawful permanent residency was pending does not count as lawful residence because his application did not confer upon him any status or benefit.  Since Vargas had not lawfully resided in the United States for seven years when he was served with notice to appear, the IJ and the BIA correctly decided that Vargas does not qualify for a waiver under § 212(h).

## V.  CONCLUSION

We hold that although the BIA correctly determined that Vargas's conviction under California Penal Code § 422 was for a CIMT and that Vargas is ineligible for an extreme hardship waiver, the BIA erred in concluding that Vargas's conviction under California Penal Code § 273.5(a) was for a CIMT by looking to evidence outside the record of conviction.  Accordingly, we grant the petition for review and remand for further proceedings consistent with this opinion.

Petition **GRANTED** and **REMANDED**.